1
2
3
4
5
6           UNITED STATES DISTRICT COURT
7            WESTERN DISTRICT OF WASHINGTON
                       AT SEATTLE

8   _____
                                            )
9                                           )
                                            )   No. C01-0675L
10  IN RE NETWORK COMMERCE INC.             )
    SECURITIES LITIGATION                   )   ORDER GRANTING NETWORK
11                                          )   COMMERCE DEFENDANTS'
                                            )   MOTION TO DISMISS SECOND
12                                          )   AMENDED CLASS ACTION
    _____)   COMPLAINT
13

14         This matter comes before the Court on "Defendants Network Commerce Inc. and
15  Dwayne Walker's Motion to Dismiss Second Amended Complaint." Dkt. # 134. Plaintiffs
16  allege that the Network Commerce defendants violated Section 11 of the Securities Act of 1933,
17  15 U.S.C. §77k, by disseminating to the investing public materially false and misleading
18  registration statements. In particular, plaintiffs allege that defendants (a) failed to disclose in
19  three registration statements a $52,912.50 loan to defendant Walker, (b) failed to disclose in the
20  registration statements a plan to pay additional compensation to other senior executives, and
21  (c) made misleading statements regarding the cash flow expected from the acquisition of
22  Ubarter.com. The Network Commerce defendants have joined in the underwriter defendants'
23  motions to dismiss and have separately moved to dismiss plaintiffs' claims for failure to satisfy
24  the heightened pleading requirements of Fed. R. Civ. P. 9(b), for failure to state a claim under
25  Section 11, and pursuant to the bespeaks caution doctrine and/or the safe harbor provisions of
26

ORDER GRANTING NETWORK COMMERCE
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT

the Private Securities Litigation Reform Act ("PSLRA").

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and heard the arguments of counsel, the Court finds as follows:

(1) For all of the reasons stated in this Court's Order Granting Underwriter Defendants' Motions to Dismiss Second Amended Class Action Complaint, of even date, the Court reiterates its findings that (a) plaintiffs' second amended complaint does not allege fraud on the part of defendants and (b) plaintiffs' allegations regarding the failure to disclose the Walker loan in the three registration statements, the effect that failure had on defendants' statements regarding executive compensation, the intended use to which monies raised would be put, the relative benefits of the loans, and lock-up provisions, and the materiality of those statements/omissions adequately state a claim under Section 11.

(2) For the reasons set forth in this Court's Order Granting Underwriter Defendants' Motions to Dismiss Second Amended Class Action Complaint, of even date, plaintiffs' allegations regarding defendants' failure to disclose Network Commerce's plan to pay additional compensation to senior executives are inadequate under Fed. R. Civ. P. 8(a) and 12(b)(6).

(3) Plaintiffs have alleged that the Network Commerce defendants inaccurately stated forecasts and projections related to cash flows expected from the Ubarter transaction in light of the significant capital investments that would be necessary for Ubarter to generate meaningful revenues (Second Consolidated Amended Class Action Complaint at ¶ 103) and that these statements misled investors in violation of Section 11.  Defendants argue that this portion of plaintiffs' Section 11 claim fails as a matter of law because their statements were not materially false or misleading when considered within the context of the entire Ubarter registration statement.  Plaintiffs' allegations regarding this part of its claim have materially altered since the Court issued its "Ordering Denying Motion to Dismiss Following Remand."  Dkt. # 103.  At the time, plaintiffs had alleged that statements regarding customer growth, revenue increases, and integration of members, inventory, and transactions were misleading in light of information

defendants obtained during due diligence. Consolidated Amended Class Action Complaint at ¶ 203. The Second Consolidated Amended Class Action Complaint omits these allegations and simply cites a portion of the Ubarter registration statement entitled "Risk Factors." This section, as its name implies, contains warnings regarding factors that could lead to less-than-optimal results from the Ubarter acquisition.[1] Plaintiffs imply that these warnings contain "forecasts and projections for cash flows from Ubarter" (Second Consolidated Amended Class Action Complaint at ¶ 103), but it is difficult to find any affirmative statement of fact in that section, much less a projection regarding cash flows. Plaintiffs have failed to identify "an untrue statement of a material fact" related to cash flow projections. Their Section 11 claim therefore

---

[1] The "Risk Factors" section on page 16 of the Ubarter registration statement reads as follows:

SHOPNOW.COM MAY NOT BE ABLE TO SUCCESSFULLY INTEGRATE UBARTER.COM AND ACHIEVE THE BENEFITS EXPECTED TO RESULT FROM THE MERGER.

The acquisition of Ubarter.com is intended to expand ShopNow.com's capability to enable businesses to exchange products and services. If ShopNow.com is unable to successfully complete the acquisition of Ubarter.com and successfully integrate Ubarter.com's businesses, technologies and personnel, its ability to increase product and service offerings will be reduced. This could cause ShopNow.com to lose business to its competitors, and ShopNow.com's operating results could suffer.

The acquisition of Ubarter.com may involve numerous risks, including:
- diverting management's attention from other business concerns;
- being unable to maintain uniform standards, controls, procedures and policies;
- entering markets in which ShopNow.com has no direct prior experience;
- improperly evaluating new services and technologies or otherwise being unable to fully exploit the anticipated opportunity; and
- being unable to successfully integrate the acquired businesses, technologies and other assets

If ShopNow.com inaccurately assessed Ubarter.com's businesses or technologies, its business could suffer. In addition, this acquisition may involve teh assumption of obligations or large one-time write-offs and amortization expenses related to goodwill and other intangible assets. Any of the factors listed above would adversely affect ShopNow.com's results of operations.

ORDER GRANTING NETWORK COMMERCE
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT           -3-

fails as a matter of law.

(4) Defendants also argue that any statements they may have made regarding the benefits expected from the Ubarter acquisition are not actionable pursuant to the bespeaks caution doctrine and the safe harbor provision of the PSLRA.[2] Plaintiffs do not dispute defendants' contention that any forecasts and projections regarding cash flows are forward-looking statements. Pursuant to the statutory and common law safe harbor protections afforded to corporations, defendants cannot be held liable for such statements if they were accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 77z-2(c)(1)(A)(I).[3]

Plaintiffs argue that the cautionary language included in the Ubarter registration statement was too generic to trigger the safe harbor protections of either the PSLRA or the bespeaks caution doctrine. In their complaint, plaintiffs assert that defendants' projections of cash flows expected from the Ubarter merger were inaccurate because "Ubarter required significant capital investments to operate and attract meaningful revenues, including a change in user interface and a new back-end management system." Second Consolidated Amended Class Action Complaint at ¶ 103. The crux of plaintiffs' claim is that defendants' rosy projections regarding the benefits of the Ubarter acquisition were misleading because defendants failed to disclose that the integration of Ubarter's technologies into Network Commerce was going to be both difficult and expensive.

---

[2] Although this argument was raised in defendants' motion to dismiss following remand, it occupied only four lines of text and the Court did not consider or rule upon the argument in the order dated November 1, 2004.

[3] The bespeaks caution doctrine is similar in that it "provides a mechanism by which a court can rule as a matter of law that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1413 (9th Cir. 1994).
ORDER GRANTING NETWORK COMMERCE
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT         -4-

Contrary to plaintiffs' assertion, the cautionary statements provided in the "Risk Factors" section of the Ubarter registration statement are "meaningful" and trigger the protections of the safe harbor provision and the bespeaks caution doctrine. Cautionary language must "convey substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statements . . . ." H.R. Rep. No. 104-369 (1995), reprinted in 141 CONG. R. H13692 at H13703 (daily ed. Nov. 28, 1995). The registration statement at issue here identifies a number of important factors, including challenges in evaluating and integrating Ubarter's technologies, that could affect the profitability of the acquisition. In fact, the entire section is capped with the warning, "SHOPNOW.COM MAY NOT BE ABLE TO SUCCESSFULLY INTEGRATE UBARTER.COM AND ACHIEVE THE BENEFITS EXPECTED TO RESULT FROM THE MERGER." These warnings and risk factors are of similar significance to the more specific warning demanded by plaintiffs in this litigation and the Court can find no authority requiring the level of specificity and detail plaintiffs seem to expect. A warning of technological integration problems encompasses the particular factors identified in plaintiffs' complaint, namely the potential need to change Ubarter's user interface and back-end management system. See, e.g., Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1133 (9th Cir. 2004). Network Commerce affirmatively cautioned investors about the risk that it would be unable to integrate Ubarter's technologies and that such problems could reduce the expected benefits of the acquisition or even cause Network Commerce's business to suffer. These are not vague or boilerplate disclaimers. They adequately disclose important factors that could cause the overall benefits from the merger to differ materially from those projected in the forward-looking statements and bring any claims based on an alleged misrepresentation regarding those projections within the safe harbor provisions of the PSLRA and the bespeaks caution doctrine.

For all of the foregoing reasons and those set forth in the Court's order regarding

ORDER GRANTING NETWORK COMMERCE
DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED CLASS ACTION COMPLAINT            -5-

the underwriter defendants' motions to dismiss, the Network Commerce defendants' motion is GRANTED. Plaintiffs' Section 11 claim based on a failure to disclose a plan to pay additional compensation to senior executives is insufficient under Fed. R. Civ. P. 8(a) and 12(b)(6). To the extent plaintiffs' Section 11 claim is based on false and misleading statements regarding the cash flow projections from the Ubarter acquisition, plaintiffs have failed to identify any untrue statements and, to the extent such statements exist, they are protected by the safe harbor provision of the PSLRA and the bespeaks caution doctrine. Plaintiffs' claims against all defendants are therefore DISMISSED. Given the long history of this matter, the number of amendments plaintiffs have made to their complaint, and the nature of the defects identified in this order, the Court finds that leave to amend these claims would be futile.

DATED this 16th day of May, 2006.

Robert S. Lasnik
United States District Judge